UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

MICHAEL SAPHIR, by and through his legal guardians,
ALBERT SAPHIR and BARBARA SAPHIR

      Plaintiff,

vs.

BROWARD COUNTY PUBLIC SCHOOLS,

      Defendant.

_____/

## **COMPLAINT**

    Plaintiff, Michael Saphir, by and through Albert Saphir and Barbara Saphir, his legal guardians, hereby sues Broward County Public Schools, and alleges:

### **JURISDICTION, VENUE AND PARTIES**

    1.    This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C §§ 1331, 1343 and 1367, and 20 U.S.C. § 1681 (a) *et seq.* (also referred to hereinafter as "Title IX of the Education Amendments of 1972" or "Title IX"). This Court has supplemental jurisdiction over Plaintiff's state common law claims pursuant to 28 U.S.C. § 1367 (a).

    2.    This action is properly venued in this Court pursuant to 28 U.S.C. § 1391 as the Defendant does business in and has its principal place of business in this District, and the events and omissions giving rise to the claims set forth herein occurred in this District.

3.      Plaintiff, Michael Saphir, is a mentally disabled adult, who was at all pertinent times a minor child residing in Broward County, Florida, in the care and custody of his parents and legal guardians, Albert Saphir and Barbara Saphir.  Michael Saphir remains domiciled in Broward County, Florida.

4.      Defendant, Broward County Public Schools (hereinafter "Defendant" or "Broward Public Schools "), is a public body corporate, and the Florida public school district that operates the public school system located within the geographic confines of Broward County, Florida, including the school which is the subject of this lawsuit, Cypress Bay High School (hereafter sometimes referred to as "the subject school.").  Pursuant to Fla. Stat. sec. 1001.30, Broward Public Schools is charged at law with the duty to control, organize and administer public schools in Broward County, including Cypress Bay High School, and is responsible for the operation and administration of all schools within its jurisdiction in conformity with those rules and standards prescribed by law.  Further, Broward Public Schools receives federal funding and financial assistance within the meaning of 20 U.S.C. sec. 1681(a) and is otherwise subject to Title IX.

## FACTS COMMON TO ALL COUNTS

5.      Michael Saphir was a minor child and an enrolled student at Cypress Bay High School at the time of the pertinent events of sexual harassment and abuse that occurred on and after April 5, 2012, continuing for approximately two years from that date, as more specifically detailed herein.

6.      Prior to the events at issue in this Complaint, when Michael Saphir was admitted to Cypress Bay High School, the administrators and teachers of the school were fully advised

and fully aware that he: (a) was intellectually disabled, (b) had social communication difficulties, secondary to Central Auditory Processing Disorder, and (c) based on the totality of his medical and developmental conditions, had an academic and social developmental level that lagged his chronological age by several years.

7.    Prior to the events at issue in this Complaint, the administrators and teachers of the subject school knew that Michael Saphir's cognitive and social developmental difficulties included difficulty in speaking up for himself and that he was susceptible to undue influence from adults; therefore, Defendant could not presume he could be an effective advocate for his own safety.   As such, the subject school was on actual notice that Michael Saphir was specifically vulnerable to sexual abuse and harassment, as well as the fact that developmentally-delayed or disabled children are, statistically, substantially more likely to be subjected to sexual abuse than their non-disabled peers, thus requiring specialized intervention following any report of sexual harassment or abuse in order to discover all pertinent facts of the nature and extent of abuse suffered.

8.    On or about April 5, 2012, while attending a school-sponsored dinner-dance with some 300 persons in attendance, Michael Saphir was sexually harassed and abused by a 52 year-old adult female teacher employed at the subject school, Ms. Nubia Lorenz.

9.    The abuse and harassment was first reported to the school official in charge of the dinner-dance, Sgt. Major Jorge Cruz, by Michael Saphir's parents, who were at the dinner-dance as guests, not chaperones, and had witnessed part of the harassment and abuse themselves; they did not tolerate any of the misconduct that they witnessed, but rather had attempted without

success to convince Ms. Lorenz to stop what she was doing to their son, and therefore they, along with the parent of another child who was present, sought help from Sgt. Major Cruz.

10.     In violation of proper and applicable procedures, standards and laws, the response by Sgt. Major Cruz was inherently inadequate and ineffective to eliminate the sexual harassment and abuse, prevent further abuse and to remedy the sexually harassing atmosphere; in this regard, Nubia Lorenz was allowed to stay at the dinner-dance, unsupervised, giving her continued access to Michael Saphir.

11.     Ms. Lorenz used her ongoing access to perpetrate further and more severe sexual harassment and abuse of Michael Saphir, escalating to sexual molestation at the dinner-dance, which she perpetrated when the parents were out of view and/or against their immediate protests upon discovering that she was again in contact with their son.

12     The actions against Michael Saphir perpetrated by Nubia Lorenz constituted sexual molestation and sexual discrimination, harassment, abuse and violence within the meaning of Title IX.

13.     As a result of the continued and escalating sexual harassment and abuse perpetrated by Ms. Lorenz, Michael Saphir's parents were forced to leave the dinner-dance with their son prematurely, while Ms. Lorenz stayed.   As a direct and proximate result, Michael Saphir sustained immediate humiliation, anxiety, fear, confusion, and other mental pain and suffering, and loss of access to an educational opportunity or benefit within the meaning of Title IX; he was left to believe that he was the wrongdoer.

14.     Following the evening of April 5, 2012, Plaintiff's parents, on behalf of Michael Saphir, promptly sent a written complaint (hereafter referred to as "the written complaint") to officials of the subject school who were empowered by virtue of their professional positions to take or direct all necessary action to respond lawfully to the sexual harassment and abuse of Michael Saphir. That written complaint detailed sexually harassing and abusive behavior by Ms. Lorenz against Michael Saphir, including:

a.      That Ms. Lorenz was walking "hand in hand" with the child.

b.      That Ms. Lorenz was walking with the child with their arms around each other.

c.      That Ms. Lorenz was "apparently intoxicated" and was physically "all over" the child and refused to let go of him, even when his parents made repeated demands that she do so.

d.      That Ms. Lorenz insisted on sitting at a table with Michael Saphir despite his parents' objections, which she aggressively rejected.

e.      That Ms. Lorenz was seated next to the child, while clasping his hand, positioned on his leg.

f.      That Ms. Lorenz was rubbing her face against the child's face.

g.      That Ms. Lorenz was dancing with the child and slapping his posterior while doing so.

15.     Upon receipt of the written complaint on or about April 9, 2012, an assistant principal of the school, Jeffrey Nelson, assumed the primary responsibility to address the

complaint.  As more fully detailed herein, he deliberately, wrongfully and unlawfully concluded that there was nothing "inappropriate" about the actions of Ms. Lorenz detailed in the written complaint, a fact he attested to and re-affirmed under oath in 2014.

16.     Upon receipt of the written complaint on or about April 9, 2012, Assistant Principal Jeffrey Nelson, together with other school employees and officials, in violation of multiple state laws, concealed from legal and child welfare authorities, as well as Florida Department of Education, the fact that the complaint of sexual harassment and abuse had been made against Nubia Lorenz.  In so doing, Assistant Principal Nelson and the other school employees and officials:

a.      Endorsed the actions of Ms. Lorenz against Michael Saphir as proper and lawful, thus perpetuating a sexual hostile atmosphere in the eyes of and to the detriment of Michael Saphir; this endorsement was affirmed again in 2014 by Jeffrey Nelson, as detailed above.

b.      Increased the adverse impact of the sexual harassment and abuse on Michael Saphir, and served to silence his ability to disclose the full scope of abuse he suffered timely, including that Ms. Lorenz had masturbated his genitalia.

c.      Unjustly, but foreseeably, caused Michael Saphir to blame himself for the actions of his abuser, thus further increasing his mental distress, deepening the adverse mental health impact, and silencing and discouraging him from fully disclosing what Ms. Lorenz did to him.

17.     Following receipt of the written complaint of abuse, Assistant Principal Jeffrey Nelson's response and actions were further legally insufficient and in violation of the non-delegable duties compelled by Title IX, in that, without necessary limitation:

a.     He conducted a willfully inadequate and improper investigation, including failing and refusing to interview known material witnesses, including Michael Saphir himself.

b.     He failed to disclose timely to law enforcement critical evidence of Ms. Lorenz's crimes, causing a loss of evidence and causing a passage of time that impeded and prevented a successful criminal investigation and prosecution.

c.     He willfully misled Albert and Barbara Saphir into believing that Ms. Lorenz had been removed from campus and would have no further contact with their son, and that the matter had been referred to school police, facts that was simply not true at all.

d.     He permitted ongoing contact between Ms. Lorenz and Michael Saphir that was inherently sexually harassing and directly damaging to his mental health.

e.     He advanced a conclusion that Michael Saphir was at fault for the events of April 5, by having misunderstood Ms. Lorenz's intentions and the nature of her contact, resulting in an atmosphere that promoted retaliatory action against Michael Saphir over approximately the next two years by other school officials and employees who were friendly with Ms. Lorenz.

f.     He excused and endorsed the actions of Ms. Lorenz, taking absolutely no disciplinary action against her.

18.     Unbeknownst to his parents, Ms. Lorenz continued to have direct contact with Michael Saphir on campus over the next two years, causing him ongoing mental distress and confusion in the sexually harassing and hostile environment.

19.     After approximately two years, Michael Saphir disclosed to a therapist further details of the sexual abuse inflicted on him by Ms. Lorenz; the therapist immediately contacted proper authorities, resulting in a criminal investigation.

20     In connection with that criminal investigation:

a.     The Defendant finally scheduled a disciplinary hearing to investigate the actions of Ms. Nubia Lorenz against Michael Saphir, albeit far too late to uphold its duties at law, including under Title IX.

b.     Ms. Nubia Lorenz refused to answer any questions from law enforcement and resigned her job in order to avoid attending the Defendant's disciplinary hearing.

c.     The Office of the State Attorney for the 17th Judicial Circuit, Broward County, Florida, concluded, in writing, that the actions of Ms. Lorenz were not timely reported to authorities and, as a direct result, a prosecution of her that would have been instituted, could not be.

21.     In 2014, as a direct and proximate consequence of the mental health harm inflicted on Michael Saphir due to his prolonged exposure to the sexually harassing and hostile atmosphere at the subject school, as well as the retaliation he unjustly suffered as a result of his original complaint in April 2012, he was medically required to withdraw from his continued

education at the subject school, specifically abandoning a job training program that had once promised to provide him his best opportunity for independence as a young adult.

22.     The undersigned law firm has been retained to represent Michael Saphir in this action and the parties have agreed that the firm shall be paid a reasonable fee for its services, together with costs incurred in this action.

23.     All conditions precedent to the maintenance of this suit and Plaintiff's claims have occurred, been performed or otherwise waived, including those pursuant to Fla. Stat. sec. 768.28.

## COUNT I – VIOLATION OF TITLE IX,
## EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681 ET SEQ.

24.     Plaintiff realleges and incorporates into this Count the Facts Common to All Counts alleged above.

25.     Plaintiff had a right under Title IX not to be subject to sexual violence, sexual assault, sexual discrimination, sexual harassment, and sexual abuse while he attended Cypress Bay High School and attended school-sponsored events, as well as after reporting any incident of same, and the right not to be subjected to retaliation for complaining about same.

26.     At all times material hereto, Cypress Bay High School officials, employees and/or agents with authority to institute corrective and preventive measures, including the school's Assistant Principal Jeffrey Nelson and Sgt. Major Cruz, at the subject dinner-dance event, had actual notice that Plaintiff had been, and was continuing to be, sexually abused and harassed by a teacher, beginning on April 5, 2012, and continuing thereafter for some two years.

27.     At all times material hereto, Defendant's officials, employees and/or agents had actual notice that the specifically-named older and adult teacher had sexually abused and harassed Michael Saphir at the subject dinner-dance event.

28.     Upon receipt of said notice, Defendant's officials, employees and/or agents had duties under Title IX to promptly and effectively respond to the complaint by eliminating the sexual harassment and abuse, preventing it from recurring and addressing its effects; this duty was ongoing after April 5, 2012, and continued throughout the next two years.

29.     On April 5, 2012, and thereafter, Defendant breached the aforesaid non-delegable duties.

30.     At all times material hereto, Defendant's officials, employees and/or agents had actual notice that allowing ongoing exposure of Plaintiff to the perpetrator, Ms. Nubia Lorenz, would result in a sexually harassing environment and inflict substantial mental health harm on him.

31.     Defendant's officials, employees and/or agents with actual notice of the foregoing had authority to institute corrective and/or preventive measures to protect Michael Saphir from ongoing sexual abuse and harassment.

32.     The sexual abuse and harassment suffered by Plaintiff was sufficiently serious to limit or deny his ability to participate in or benefit from the school's educational opportunities and benefits, including by the creation of sexually hostile environment.

33.     Upon receipt of notice of the sexual harassment and abuse, multiple school officials and employees with the power to do so failed to take prompt and effective steps

reasonably calculated to end the sexual harassment and abuse, eliminate the hostile environment, prevent its recurrence, and remedy its effects.

34. Michael Saphir was further retaliated against in violation of Title IX for having complained of the sexual harassment and abuse by Nubia Lorenz, including in that certain school officials asserted that Michael Saphir was at fault for the actions of Ms. Lorenz on April 5, 2012, and further, in a retaliatory fashion, attempted to discredit him by subsequently falsely accusing him of sexually harassing a peer, an accusation that was ultimately categorically disproved, but only after inflicting further mental health harm and confusion on Michael Saphir.

36. As a result of the gross failure to act in accord with duties imposed by Title IX and state laws, and retaliation against Plaintiff, Plaintiff was sexually harassed and subjected to an ongoing atmosphere of sexual harassment and hostility.

37. The decisions and actions of Defendant's officials, employees and/or agents to forego any corrective and/or preventive measures and maintain the status quo were official decisions to ignore the palpable and known risk of sexual violence, abuse and harassment, and a hostile sexual environment, to Michael Saphir.

38. This lack of response to actual notice exhibited deliberate indifference to sexual violence, abuse, harassment and discrimination.

39. The Defendant's responses to the sexual harassment and abuse suffered by Michael Saphir were clearly unreasonable in light of the known circumstances.

40. For Plaintiff, Cypress Bay High School became a sexually hostile environment where his complaints of sexual harassment and abuse were unreasonably discounted as not being

sexual in nature at all and being the result of his own improper perceptions; where his sexual

harasser and abuser remained free to remain in contact with him, and did on school grounds; and

where he was subjected to wretchedly unfair criticism and retaliation for his complaints.

41.     Despite receipt of actual notice as described hereinabove, Defendant's officials,

employees and/or agents acted with deliberate indifference to Plaintiff's known sexual

harassment, and the sexually hostile education environment in which he suffered, in failing to

take prompt and effective steps reasonably calculated to end the sexual harassment, eliminate the

hostile environment, prevent its recurrence, and remedy its effects, including, but not necessarily

limited to:

a.     Conducting a facially inadequate investigation, including failing to

provide an opportunity for Plaintiff to be interviewed as part of the fact-finding process.

b.     Unreasonably rejecting the written report of sexual harassment and abuse

as not constituting on its face a complaint of sexually harassing or abusive conduct, when it

plainly did in the eyes of any reasonably-sensitive reviewer.

c.     Unreasonably blaming the entire complaint on a misperception by

Plaintiff, despite the fact that the written complaint contained objective witness reports of

sexualized behavior against Michael Saphir by an adult teacher.

d.     Failing to exclude Nubia Lorenz from campus.

e.     Failing to require that Nubia Lorenz to keep a certain distance from

Michael Saphir on campus if she was going to remain there.

      f.     Otherwise failing to supervise, monitor, restrict or effectively control interaction between Plaintiff and Nubia Lorenz.

      g.     Failing to report the verbal and written complaints to proper authorities as required by law for a professional investigation and intervention.

      h.     Failing to implement and/or enforce policies to prevent teacher-on-student sexual violence, harassment and assault, and retaliation.

      i.     Failing to adequately train teachers and staff in the prevention and response to teacher-on-student sexual violence, harassment and assault in a manner that would uphold duties owed to Plaintiff under Title IX.

      j.     Misleading Plaintiff's parents into believing that Nubia Lorenz was no longer employed at the school after April 5, 2012 and/or that she would have no contact with or access to Michael Saphir.

42.     Plaintiff was subjected to the discrimination because of Defendant's deliberate indifference to known acts of sexual harassment, illegal sexual conduct perpetrated by a teacher against a minor student, and retaliation, including, without necessary limitation:

      a.     The deliberate decision not to remove the perpetrator from the dinner-dance upon receiving a complaint of sexual impropriety against Plaintiff

      b.     The deliberate decision not to remove Nubia Lorenz from the school after April 5, 2012, or, at a minimum, to make sure that she had no further contact with Michael Saphir on campus.

c.     The deliberate decision not to conduct a proper and immediate investigation into the complaint of sexual impropriety against Plaintiff to ensure that any ongoing abuse and harassment were terminated, that the risk of recurrence was fully mitigated and that the effects of harassment and abuse already sustained were remedied.

d.     In connection with any "investigation," the deliberate decision not to interview all known witnesses to the acts complained of, including all witnesses identified by and known to Albert and Barbara Saphir.

e.     In connection with any "investigation," the deliberate decision not to interview Michael Saphir himself

f.     The deliberate failure to establish, maintain and/or enforce a policy or procedure that would have compelled removal of the perpetrator from the dinner-dance upon receiving a complaint of sexual impropriety against Plaintiff, at a minimum until a complete investigation could be completed.

g.     The deliberate decision not to report the complaint as one of known or suspected child abuse to child welfare authorities, law enforcement and the state Department of Investigation

h.     The deliberate decision not to conduct an internal disciplinary hearing against Nubia Lorenz for over two years.

i.     The deliberate decision not to apply properly and consistently its own policies and procedures for responding to a complaint of sexual harassment and abuse.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400   Facsimile (561) 515-1401*

j.      The deliberate decision to do nothing to eliminate the sexual assault risk posed by Nubia Lorenz, prevent its recurrence and address its effects, including the foreseeable emotional distress and mental confusion suffered by Michael Saphir as a result of knowing that no disciplinary action was taken against her and that she was allowed to stay at the dinner-dance on April 5, 2012, and to resume teaching thereafter as if nothing improper had happened.

k.      Defendant's non-compliance and willful ignorance of its own standards, policies, procedures and definition of sexual harassment and abuse.

43.      The sexual violence, abuse, harassment and discrimination of Michael Saphir, and retaliation against him, was so pervasive, severe, and continuous that it created an intolerably hostile and damaging environment for him, and effectively barred him from meaningful access to and participation in educational opportunities or benefits from Cypress Bay High School, including, without necessary limitation:

a.      Barring him for several months from participating in speech therapy services at school that were required under his Individual Education Plan.

b.      Barring him from access to physical education programs with his peers.

c.      Barring him from participating in education field trips with his peers.

d.      Forcing Michael Saphir to discontinue his education at the school prematurely.

44.      Plaintiff has suffered other damages as a direct and proximate and foreseeable result of Defendant's violations of law detailed herein, including without limitation, severe and permanent physical, psychological and emotional injuries and damages; as well as anguish,

suffering, pain, shame, humiliation, and inability to enjoy a normal life, loss of earnings and lost earning capacity.  Michael Saphir has, moreover, required extensive treatment, and has incurred medical and related expenses in the treatment of those injuries.

45.    Michael Saphir's injuries are continuing in nature, and Michael Saphir will continue to suffer pain and emotional damage and permanent injury, and in the future will require additional medical care and treatment, and will be further compelled to expend great sums of money for medical and/or psychiatric care and treatment for his injuries, and will continue to suffer the loss of the capacity for the enjoyment of life, loss of earnings and lost earning capacity.

WHEREFORE, Plaintiff demands from Defendant compensatory damages, attorney's fees, punitive damages, and costs pursuant to 42 U.S.C. § 1988, and any and all other financial damages recoverable under Title IX, and such other and further relief as this court deems just and proper.

## COUNT II– NEGLIGENCE

46.    Plaintiff realleges and incorporates into this Count the Facts Common to All Counts alleged above.

47.    Defendant owed a duty to use reasonable and ordinary care to provide a safe environment and to protect the safety and well-being of Michael Saphir while he was in their care or custody, which included during the time that he was attending school functions, such as the subject dinner-dance on April 5, 2012.

*Cohen Milstein Sellers & Toll, PLLC*
*2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410*
*Telephone: (561) 515-1400  Facsimile (561) 515-1401*

48.     Among its duties owed to Plaintiff, Defendant had a duty to establish and enforce adequate policies and procedures to prevent teacher-on-student sexual assault and harassment, and policies and procedures to ensure a safe and non-retaliatory response to complaints of such wrongdoing when it did happen.

49.     Among its duties owed to Plaintiff, Defendant had a duty on how to properly, lawfully and safely respond to complaints of sexual abuse and harassment.

50.     Among its duties owed to Plaintiff, Defendant had a duty to adequately train and supervise its staff, and a related duty to establish and enforce policies and procedures on how to properly, lawfully and safely respond to complaints of sexual abuse and harassment perpetrated by teachers against students, such as the complaints made by Michael Saphir.

51.     A special relationship existed between Defendant and Michael Saphir such that Defendant had a duty to act affirmatively to protect him from risk of foreseeable harm.

52.     Sexual abuse by older and adult teachers against mentally disabled minor students, such as Plaintiff, was a foreseeable risk of harm.

53.     Defendant breached its aforesaid duties, including by not safeguarding against, monitoring for and otherwise preventing the opportunity for abusers to engage in abusive conduct towards Plaintiff, and by not properly, lawfully and safely responding to his initial and subsequent complaints of sexual abuse and harassment.

54.     Defendant further breached its aforesaid duties owed to Michael Saphir by, without necessary limitation:

a.      Failing to act proactively to identify and mitigate the risk of sexual abuse and harassment.

b.      Failing to react lawfully and non-negligently to specific knowledge of risk of abuse to Michael Saphir.

c.      Failing to react lawfully and non-negligently to Michael Saphir's initial and subsequent complaints of sexual abuse and harassment.

d.      Failing to act timely to the known risk of harm to Michael Saphir, in order to mitigate that risk, and failing to act timely in response to known harm to Michael Saphir.

e.      By intentionally returning him directly into an environment where his abuser remained present and unsupervised, without having instituted any measures to ensure his safety, during which time he was subjected to further sexual assault.

55.     As a direct and proximate result of Defendant's breach of duties owed to Michael Saphir, he suffered multiple incidents of sexual abuse and ongoing sexual harassment and his treatment to recover from that harm was prejudicially delayed.

56.     As a direct and proximate and foreseeable result of Defendant's negligence, Plaintiff has suffered pain including mental pain and suffering and physical pain and suffering; has suffered psychological and emotional damages; has suffered shame and humiliation; has sustained permanent injuries; has required extensive treatment; has incurred medical and related expenses in the treatment of those injuries; has incurred costs of necessary therapeutic residential and educational care, and has lost the capacity for the enjoyment of life, lost wages and lost earning capacity.

57.     The injuries suffered are continuing in nature, and Michael Saphir will continue to suffer pain and emotional damage and permanent injury, and in the future will require additional medical care and treatment and specialized education and residential care, and will be further compelled to expend great sums of money for medical and/or psychiatric care and treatment for his injuries, and will continue to suffer the loss of the capacity for the enjoyment of life, lost wages and lost earning capacity.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, costs of this action and such other and further relief as this Court deems just and necessary.

### COUNT III -- NEGLIGENT HIRING, RETENTION AND/OR SUPERVISION

58.     Plaintiff realleges and incorporates into this Count the Facts Common to All Counts alleged above.

59.     Defendant owed an affirmative duty to Michael Saphir to properly screen, hire, supervise, investigate, discipline, and terminate its employees, and further to appropriately staff the subject school to prevent harm to Plaintiff.

60.     Defendant was negligent and breached that duty to Plaintiff by failing to properly screen, hire, supervise, investigate, discipline and/or protect him from the negligence of its employees who failed to respond properly, lawfully and safely to his initial and subsequent complaints of being sexually abused and harassed by Nubia Lorenz.

61.     Defendant was negligent and breached that duty to Plaintiff by failing to properly screen, hire, supervise, investigate, discipline and/or protect him from the sexual attacks

perpetrated by Nubia Lorenz, including after receiving the initial verbal complaint from Albert and Barbara Saphir.

62.     As a direct and proximate and foreseeable result of the negligence of Defendant, Michael Saphir was sexually assaulted repeatedly and subjected to ongoing sexual harassment, and a sexually harassing and hostile environment for over two years, as well as related mental health damage from ongoing exposure to the abuser and retaliation from other employees of Defendant.

63.     As a direct and proximate result of Defendant's breach of duties owed to Michael Saphir, he suffered multiple incidents of sexual abuse and ongoing sexual harassment, as well as retaliation, and his treatment to recover from that harm was prejudicially delayed.

64.     As a direct and proximate and foreseeable result of Defendant's negligence, Plaintiff has suffered pain including mental pain and suffering and physical pain and suffering; has suffered psychological and emotional damages; has suffered shame and humiliation; has sustained permanent injuries; has required extensive treatment; has incurred medical and related expenses in the treatment of those injuries; has incurred costs of necessary therapeutic residential and educational care, and has lost the capacity for the enjoyment of life, lost wages and lost earning capacity.

65.     The injuries suffered are continuing in nature, and Michael Saphir will continue to suffer pain and emotional damage and permanent injury, and in the future will require additional medical care and treatment and specialized education and residential care, and will be further compelled to expend great sums of money for medical and/or psychiatric care and treatment for

Cohen Milstein Sellers & Toll, PLLC
2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400   Facsimile (561) 515-1401

his injuries, and will continue to suffer the loss of the capacity for the enjoyment of life, lost

wages and lost earning capacity.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory

damages, costs of this action and such other and further relief as this Court deems just and

necessary.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: March 30, 2016

Respectfully submitted,

s/Michael T. Dolce
Michael T. Dolce (Florida Bar No.: 048445)
Email:  mdolce@cohenmilstein.com
Leslie M. Kroeger (Florida Bar No.:  989762)
Email:  lkroeger@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL, PLLC**
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone:  (561) 515-1400
Facsimile:  (561) 515-1401